## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **RONALD B. HARDY, Individually and on Behalf of All Others Similarly Situated,** ) ) ) | |
| **Plaintiff** ) | Case No. _____ |
| ) | **DEMAND FOR JURY TRIAL** |
| **v.** ) ) | |
| **TRANSAMERICA LIFE INSURANCE COMPANY** ) ) ) | |
| **Defendant.** ) | |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, Ronald B. Hardy, individually and on behalf of all others similarly situated, and files this Class Action Complaint against Defendant Transamerica Life Insurance Company. In support thereof, Plaintiff alleges the following upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by and through his attorneys:

### NATURE OF THE CASE

1. This is a class action brought pursuant to Fed. R. Civ. P. 23 on behalf of two separate classes for Defendant's breaches of a Direct Recognition Life I Group Insurance Certificate ("Certificate") and an associated endorsement to the Certificate.

2. The first class (the "Enhancement Endorsement Class") was harmed when Defendant breached an endorsement to their life insurance Certificate that was to provide Plaintiff and individual class members each year for a period of eighteen years a guaranteed one percent enhancement to the minimum interest rate otherwise provided by the terms of their Certificates. Plaintiff and individual class members did not receive the benefit of this enhancement in each of

1

the years where the Defendant failed to credit the additional one percent interest to the cash value of the certificates. Likewise, the Plaintiff and class members did not receive the benefits that would have otherwise accrued over time had the interest been properly credited.

3. The second class (the "Asset Management Fee Class") was harmed by the Defendant's unauthorized deduction of an "asset management fee" from Plaintiff and putative class members' cash values.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between the parties and the matter in controversy exceeds $5,000,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is subject to the personal jurisdiction of this Court and Plaintiff resides in this district, the contracts at issue were entered into in this district, and the Plaintiff suffered harm here.

## PARTIES

6. Plaintiff, Ronald ("Ron") B. Hardy is a citizen and current resident of Huntsville, Alabama.

7. Defendant Transamerica Life Insurance Company ("Transamerica") is a corporation organized under Iowa law, with its principal place of business at 4333 Edgewood Road NE, Cedar Rapids, Iowa 52499, and regularly conducts business in this district. Transamerica may be served via its registered agent at CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama, 36104.

8. Plaintiff's Direct Recognition Life Certificate was issued by General Services Life Insurance Company ("General Services") and/or Pacific Fidelity Life Insurance Company

("Pacific Fidelity").[1] General Services was an Iowa corporation, which changed its name to Medco Containment Life Insurance Company ("Medco Containment") on August 5, 1994. Medco Containment is currently listed as inactive on the Iowa Secretary of State's website, with the last reported filing being an Annual Report filed on April 10, 1995. A corporation with the same name – Medco Containment Life Insurance Company – was incorporated in Pennsylvania on July 20, 1995. While it is unclear if there is any affiliation of the Pennsylvania company with General Services, the inactive Medco Containment lists its home office address as being the same as that of Transamerica (333 Edgewood Road NE, Cedar Rapids, Iowa 52499). Thus, upon information and belief, General Services is, or was, affiliated with Transamerica. Plaintiff was unable to locate any information regarding Pacific Fidelity and assumes that it is an inactive corporation.

9. By August 17, 1996 when Plaintiff was offered and accepted the interest enhancement endorsement discussed herein, Bankers United Life Assurance Company ("Bankers United") had become the insurer for Plaintiff's policy. Bankers United merged with Life Investors Insurance Company of America ("Life Investors"), taking the latter's name on September 27, 2001.

10. Life Investors merged with Transamerica Life Insurance Company, taking the latter's name on October 2, 2008.

11. In sum, through these transitions, Transamerica ultimately became the insurer for Plaintiff's Certificate and the Class Certificates, assumed all related liabilities, and currently administers these Certificates. As used herein, the term "Defendant" refers collectively to Transamerica, Life Investors, Bankers United, General Services, and Pacific Fidelity.

---

[1] The Face Page of Plaintiff's Group Insurance Certificate identifies "Pacific Fidelity Life Insurance Company" in the heading, but the pages following it, including the signature page, list "General Services Life Insurance Company" as the insurer.

**FACTUAL ALLEGATIONS**

12. Plaintiff Hardy purchased and was issued a certificate of life insurance from Pacific Fidelity and/or General Services on September 29, 1988, bearing the certificate number xxx0438, with a face amount of $550,000. According to the certificate and illustrations provided, Plaintiff's premiums would be $500/month, and his coverage began on August 9, 1988. A true and accurate copy of the Certificate is attached hereto as Exhibit A and incorporated herein by reference.

13. On July 22, 2016, Defendant sent Plaintiff a letter that indicated his death benefit would terminate in 2020. On August 31, 2016, Plaintiff's agent sent him a letter confirming this information and informing him that his premium would increase substantially if he wanted to maintain the death benefit beyond 2020. After receiving the letters, Plaintiff engaged counsel who undertook investigation of Plaintiff's claims and through the course of that investigation the claims asserted herein were discovered. Prior to the July 22, 2016 and August 31, 2016 letters mentioned above, Defendant actively concealed the facts of its breaches. The concealment was accomplished through issuance of misleading and incomplete annual statements, and other communications from the company that failed to disclose the whole truth of Defendant's conscious decision to not honor the terms of the interest enhancement endorsement or the terms of the Certificate issued to the Plaintiff.

**The Interest Enhancement Endorsement**

14. On August 19, 1996, Plaintiff received a letter acknowledging his acceptance of the "Enhancement '96 offer." *See* Enhancement Endorsement and Associated Documents, attached as Exhibit B. The letter enclosed an endorsement and explained "[t]he endorsement generally

4

provides that the cash value of your certificate will be credited with an additional one percent interest for the next eighteen (18) years." *Id.*

15. Specifically, the endorsement states:

**LEVERAGED SPLIT DOLLAR LIFE INSURANCE PLAN INTEREST ENHANCEMENT ENDORSEMENT**

On the anniversary of the Coverage Effective Date of the above numbered certificate (the "Certificate") following the date of this Endorsement, and for the subsequent seventeen (17) anniversaries, the Company will credit the Cash Values of the Certificate with additional interest of one percent (1%) per year in excess of the then current effective annual net interest earnings rate applicable to the Interest Earnings Strategy(ies) underlying the Certificate's Cash Values.

The additional annual interest credits described above shall be effective only on the anniversary date(s) of the Certificate, provided the Certificate is in force on such date(s), and shall not be credited on a pro-rata basis if the Certificate lapses or is surrendered other than on an anniversary date.

*Id.*

16. The effective date of the endorsement was June 17, 1996, and the one percent enhancement was required to begin being credited on August 9, 1996 pursuant to the endorsement's terms.

**Defendant's Failure to Honor the Endorsement**

17. Plaintiff's Certificate provides that four percent is the minimum guaranteed interest rate:

ACCOUNT VALUES; INTEREST AND EXCESS INTEREST CREDITED TO ACCOUNT VALUES. . . . The effective annual "Interest Earnings Rate" for a particular interest earnings strategy, shall be determined net of direct investment expenses and any taxes which may be levied on investment income, and shall be applied to the accumulated balance of your Account Values held in that interest earnings strategy. . . . The Interest Earnings Rate will be credited in full, first to the 4% minimum guarantees or such higher guaranteed rate as we may declare from time to time, and then to Excess Interest for your Certificate.

*See* Exhibit A.

18.     With issuance of the Interest Enhancement Endorsement, Plaintiff was guaranteed to receive a minimum of five percent interest on his Policy from August 9, 1996 – August 8, 2014. Thus, the Interest Enhancement Endorsement created a continuous contractual duty for the term of the Endorsement.

19.     Defendant breached Plaintiff's Interest Enhancement Endorsement each year by failing to credit the additional interest guaranteed by the terms of the Endorsement and/or by incorrectly calculating the "Minimum Guaranteed Rate Next 12 Months." Every year that Defendant failed to credit the additional 1% interest and/or incorrectly calculated the "Minimum Guaranteed Rate Next 12 Months" constituted a separate breach of contract and each breach caused damages.

**The Asset Management Fee**

20.     Defendant also charged Plaintiff (and putative Class members of the Asset Management Fee Class) an "Asset Management Fee."

21.     The Certificate and Class Certificates do not mention an "asset management fee," and thus, do not authorize the charging of such fee.

22.     Rather, the Certificate and Class Certificates contemplate only the charging of an "administrative charge" and other specified fees. *See, e.g.*, Exhibit A at p. G-DRL 0160-5 ("We . . . shall deduct from the Account Values any applicable Administrative Charge, Risk Charge and monthly service charge, as reflected in the account values shown in the Illustration.").

23.     Both the authorized administrative charge and the unauthorized asset management fee were deducted from Plaintiff's cash values and the cash values of putative Class members of the Asset Management Fee Class. The deduction of the Asset Management Fee diminished the cash value, undermined the performance of the Certificates and caused damages.

## CLASS ALLEGATIONS

24.     Plaintiff brings this case as a class action under FED. R. CIV. P. 23, on behalf of himself and as a representative of the following Classes:

**Enhancement Endorsement Class:** All persons who were issued a Leveraged Split Dollar Life Insurance Plan Interest Enhancement Endorsement ("Enhancement '96") guaranteeing that Transamerica Life Insurance Company and/or its predecessors, including but not limited to Bankers United Life Assurance Company and/or Western Reserve Life Assurance Company of Ohio, would credit additional interest to the cash value of a Life Insurance Certificate or policy and for which it failed to honor during some or all of the required term of the endorsement.

**Asset Management Fee Class:** All persons who own, or previously owned, a Life Insurance Certificate or policy issued by Transamerica Life Insurance Company or its predecessors, including, but not limited to, Pacific Fidelity Life Insurance Company and General Services Life Insurance Company, that were charged an "Asset Management Fee" that was not authorized by the terms of the certificate or policy.

25.     Excluded from the Classes is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

26.     The Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

27.     The persons who fall within each of the Classes number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because Class members are geographically dispersed across the nation, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

28.     There are questions of fact and law common to each Class that predominate over any questions affecting only individual members.

29. The questions of law and fact common to the Enhancement Endorsement Class arising from Defendant's actions include, without limitation, the following:

   a. Whether Defendant failed to add the one percent enhancement to Plaintiff and putative Class members' cash values during the eighteen-year term provided by the enhancement;

   b. Whether Defendant breached the terms of Plaintiff and putative Class members' Interest Enhancement Endorsement by failing to add the one percent enhancement to Plaintiff and putative Class members' cash values;

   c. Whether the Class sustained damages as a result of Defendant's breaches of contract; and

   d. Whether the Class is entitled to damages, restitution, and/or other relief as a remedy for Defendant's breaches of contract.

30. The questions of law and fact common to the Asset Management Fee Class arising from Defendant's actions include, without limitation, the following:

   a. Whether Defendant deducted an asset management fee from the interest earned or cash values on Plaintiff and putative Class members' certificates and/or policies;

   b. Whether Defendant breached the terms of Plaintiff and putative Class members' certificates and/or policies by charging an asset management fee;

   c. Whether Defendant was authorized to deduct an asset management fee from Plaintiff and putative Class members' certificates and/or policies;

   d. Whether the Class sustained damages as a result of Defendant's breaches of contract; and

   e. Whether the Class is entitled to damages, restitution, and/or other relief as a remedy for Defendant's breaches of contract.

31. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

32.     Plaintiff's claims are typical of those of each of the Classes.  Class members of the Enhancement Endorsement Class were offered and accepted the one percent Interest Enhancement Endorsement, and Class members of the Asset Management Fee Class were charged asset management fees although their Certificates did not authorize the charging of asset management fees.

33.     A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendant has acted or refused to act on grounds generally applicable to the Classes.  The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

34.     Plaintiff is an adequate representative of the Classes because he is a member of each Class and his interests do not conflict with the interests of those he seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel, who have extensive experience prosecuting complex class litigation.

35.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

## COUNT I – BREACH OF CONTRACT
**(Enhancement Endorsement Class)**

36.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

37. Plaintiff and the Enhancement Endorsement Class (referred to as the "Class" in this Count I) purchased the Certificate and Class Certificates and/or Policies from Defendant and then were offered and accepted an Enhancement Endorsement.

38. Plaintiff and the Class agreed to accept the Interest Enhancement Endorsement offered by Defendant for their Certificates and/or Policies with the expectation that they would receive an additional one percent interest per year to their cash values.

39. The Endorsement provided that Defendant would "credit the Cash Values of the Certificate with additional interest of one percent (1%) per year in excess of the then current effective annual net interest earnings rate applicable to the Interest Earnings Strategy(ies) underlying the Certificate's Cash Values."

40. Plaintiff and the Class substantially performed their obligations under the terms of the Certificate and Class Certificates and/or Policies.

41. Each year, within the time frame provided by the Interest Enhancement Endorsement, that Defendant failed to add one percent interest to Plaintiff and the Class members' cash values constituted a breach of the Certificate and Class Certificates and/or Policies.

42. As a direct and proximate result of Defendant's breaches, Plaintiff and the Class have been damaged.

### COUNT II – BREACH OF CONTRACT
**(Asset Management Fee Class)**

43. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

44. Plaintiff and the Asset Management Fee Class (referred to as the "Class" in this Count II) purchased the Certificate and Class Certificates and/or Policies, from Defendant.

45. Plaintiff and the Class substantially performed their obligations under the terms of the Certificate and Class Certificates and/or Policies.

46. The Certificate and Class Certificates and/or Policies contemplate the charging of an administrative charge, risk charge, and monthly service charge, but do not provide for the deduction of an asset management fee.

47. By deducting an unauthorized asset management fee from the cash values of Plaintiff and the Class, Defendant breached the terms of the Certificate and Class Certificates and/or Policies. Each time the Defendant deducted the unauthorized asset management fee constituted a separate breach of contract.

48. As a direct and proximate result of Defendant's breaches, Plaintiff and the Class have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief as follows: an order certifying this case as a class action under FED. R. CIV. P. 23, compensatory damages in an amount to be proven at trial; pre- and post-judgment interest at the maximum rate allowed by law; disgorgement; and such other legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.


Dated:   May 4, 2018

/s/ Michael Yancey
*Attorneys for Plaintiff*
P. Michael Yancey (ASB-1134-r75y)
James M. Terrell (ASB-0887-l73j)
Courtney C. Gipson (ASB-5152-q91k)
Brooke B. Rebarchak (ASB-6522-s69v)
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
myancey@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

David J. Hodge
**MORRIS, KING & HODGE, P.C.**
200 Pratt Avenue
Huntsville, Alabama 35801
Telephone: (256) 536-0588
Facsimile: (256) 533-1504
dhodge@mkhlawyers.com

Philip A. Geddes
651 Jackson Street
Decatur, Alabama 35601
Telephone: (256) 303-9972
geddesphilip@gmail.com

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL**

**Transamerica Life Insurance Company**
c/o CT Corporation System
2 North Jackson Street, Suite 605,
Montgomery, Alabama, 36104