FILED
2019 Jul-23 PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RONALD B HARDY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **5:18-cv-00694-AKK** |
| **TRANSAMERICA LIFE** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Ronald Hardy filed this lawsuit against Transamerica Life Insurance Company, alleging breach of contract claims individually and on behalf of all others similarly situated in two proposed classes, the Certificate Value Class and Enhancement Endorsement Class. Doc. 11. Hardy subsequently dismissed, without prejudice, his enhancement endorsement class claim (Count II). Doc. 18 at 15, n. 5. As such, the only remaining claim is the certificate value class claim (Count I). As to this claim, Hardy maintains that Transamerica mismanaged the account values of his life insurance policy and charged an undisclosed administrative fee affecting his potential interest earnings. Doc. 11 at 5-15. Before the court is Transamerica's Motion to Dismiss, in which it contends that Hardy's claim is barred by Alabama's Rule of Repose, or alternatively, Alabama's

1

six year statute of limitations for contract claims. Doc. 15. The motion, which is fully briefed and ripe for review, docs. 15, 18, 19, is due to be granted on the alternative statute of limitations grounds.

**I. STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND[1]

In September 1988, Pacific Fidelity and/or General Services, predecessor companies to Transamerica, issued Hardy a certificate of life insurance under a "split dollar arrangement" with a value amount of $550,000. Doc. 11 at 3. In 1995, the insurers notified Hardy that his arrangement no longer qualified and purportedly "orchestrated a plan to terminate" this "split dollar" plan, resulting in a value amount loss of $182,000. *Id.* at 11-12. In addition, Transamerica also purportedly reduced the policy's interest earnings to pay administrative charges. *Id.* at 9-10; doc. 18 at 16. Allegedly, Transamerica charged an unauthorized "asset management fee" and attempted to disguise it as an additional "administrative charge." Doc. 1 at 8-9. Thus, the administrative charges were "withdrawn on a

---

[1] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Iqbal*, 556 U.S. at 678-79.

monthly basis from the Account Values," and Transamerica deducted the charges *before* the interest earnings rate was applied to the account value. Doc. 11 at 9. Hardy maintains that he discovered this conduct 21 years later when, in response to a notice in 2016 that his death benefits would terminate in four years and that his premium would increase substantially if he wanted to maintain the benefit, Hardy "engaged counsel who undertook investigation of [Hardy's] claims and through the course of that investigation the claims asserted [in this lawsuit] were discovered." *Id.* at 14.

**III. DISCUSSION**

Transamerica argues that the lawsuit is barred by Alabama's statute of repose or, alternatively, the statute of limitations. The court reviews each contention below.

### A. Applicable Law and the Rule of Repose

Although the Master Policy is "governed by the laws of the jurisdiction where it is delivered," and "Missouri" is listed as the "State of Delivery," doc. 11-1 at 3, Transamerica contends that Alabama law, which has a 20-year rule of repose, should govern this dispute. Because Hardy's alleged claims accrued more than 20 years ago, Transamerica maintains that this lawsuit is barred by Alabama's Rule of Repose, and that applying Missouri law would be contrary to Alabama's public policy favoring a rule of repose. Hardy counters that Missouri law, which does not have a repose rule, applies. The court agrees with Hardy.

4

Generally, "[w]hen the parties to a contract have chosen the law of a particular state to apply, that selected state's law ordinarily will govern the contract dispute in a court in Alabama, notwithstanding the fact that the contract may have been formed in a different state." *DJR Assocs., LLC v. Hammonds*, 241 F. Supp. 3d 1208, 1220 (N.D. Ala. 2017) (citing *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200 (Ala. 2009)). The only exception is if the selected state law is contrary to the fundamental public policy of Alabama. *Cherry, Bekaert & Holland v. Brown,* 582 So. 2d 502, 507 (Ala. 1991) (citing *Restatement Second of Conflict of Laws*, §§ 187 and 188). At issue here is Transamerica's contention that applying Missouri law would violate the "long-settled public policy in Alabama" reflected in the rule of repose.[2] Doc. 15 at 5-6. Transamerica's contention is unavailing, in part, as it is based on cases that are inapposite to Hardy's breach of contract claims and that do not analyze contracts in which a choice of law clause is at issue.[3] More fundamentally, Transamerica "cite[s] no case in which the Alabama Supreme Court has held that another state's statute of repose, or any other foreign statute, violates public policy to the extent that it is unenforceable." *Terrell v. Damon Motor Coach Corp*, No. 6:12-CV-02390-LSC, 2013 WL

---

[2] "Since 1858, causes of action asserted in Alabama courts more than 20 years after they could have been asserted have been considered to have been extinguished by the rule of repose." *Collins v. Scenic Homes, Inc.*, 38 So. 3d 28, 33 (Ala. 2009).

[3] *See Collins*, 38 So. 3d at 28 (choice of law clause in a contract not at issue); *Ex parte Liberty Nat. Life Ins. Co.*, 825 So. 2d 758, 761 (Ala. 2002) (same); *Tierce v. Ellis,* 624 So. 2d 553, 554 (Ala. 1993) (same); *Fuller v. Knight,* 241 Ala. 257, 260, 2 So. 2d 605, 607 (1941) (same); *Snodgrass,* 176 Ala. at 280 (same).

6145534, at *6 (N.D. Ala. Nov. 20, 2013) (noting that "neither [Tennessee's statute of repose] nor any other Alabama precedent suggests that Alabama courts would not apply a sister state's statute of repose"). Therefore, in the absence of a case holding that Alabama's rule of repose trumps the laws of other states, the court joins its sister courts in finding that applying the parties' choice of law provision would not result in a fundamental violation of Alabama public policy,[4] and finds that Hardy's claims are not barred by Alabama's rule of repose.

### B. Statute of Limitations[5]

Transamerica next contends that Hardy's claim accrued as far back as 1996, based on the account statement Hardy received after the "split dollar" plan was

---

[4] *See, e.g., Terrel1*, 2013 WL 6145534, at *4 ("Summary judgment is proper on all of Plaintiffs' claims because they are barred by the Tennessee statute of repose."); *Harper v. O'Charley's, LLC,* No. CV 16-0577-WS-M, 2017 WL 5598815, at *5 (S.D. Ala. Nov. 20, 2017) ("The mere fact that Alabama has structured its construction statute of repose differently than Mississippi does not necessarily prompt a conclusion . . . that any divergence from the Alabama statute necessarily violates a fundamental policy of Alabama.").

[5] A Rule 12(b)(6) dismissal "on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred.'" *Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.,* 522 F.3d 1190, 1194 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 (11th Cir. 2005)). When ruling on such motions, the court must accept "the facts alleged in the complaint as true" and must "draw[ ] all reasonable inferences in the plaintiff's favor." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Moreover, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). Hardy's certificate account statements and policy terms, which Transamerica attached to its motion and Hardy does not dispute, are central to his complaint and "a necessary part of [Hardy's] effort to make out a claim." *Basson v. Mortg. Elec. Registration Sys., Inc.,* 741 F. App'x 770, 771 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1628 (2019) (internal quotation and citation omitted).

terminated, and that Hardy's claims are barred by Alabama's six-year statute of limitations for contract disputes. *See* docs. 15 at 11-14; 15-1 at 2. Hardy maintains that the laws of Missouri,[6] as the chosen state of delivery of the Master Policy, should govern the applicable statute of limitations. Doc. 18 at 7. Under Missouri law, "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." *Id.* "Capable of ascertainment" is defined as when "the evidence [is] such to place a reasonably prudent person on notice of a potentially actionable injury," and the "objective" test is viewed from the standpoint of a "reasonable person in [plaintiff's] situation." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582-586 (Mo. 2006). Hardy argues that his claims are timely because he only became capable of ascertaining Transamerica's breach in 2016, doc. 18 at 8-11, which is the same contention he makes to argue that his claims are timely even if the court applies the Alabama statute of limitations, *id.* at 14-15.

In support of applying Alabama's statute of limitations, Transamerica argues that, although Missouri law applies to the contract's substantive matter, "[a]s to matters of procedure, however, Alabama applies its own procedural law, i.e., the

---

[6] "The statute of limitations for [civil actions excluding property] claims is five years after the cause of action accrues." *Levitt v. Merck & Co., Inc.,* 914 F.3d 1169, 1171 (8th Cir. 2019) (citing Mo. Ann. Stat. § 516.120). Missouri law provides that the statute of limitations is ten years for actions based on a payment of money or property. *See* Mo. Ann. Stat. §§ 516.110-120.

7

law of the forum . . . [and in most instances] statutes of limitations are procedural matters." *Precision Gear Co. v. Cont'l Motors, Inc.*, 135 So. 3d 953, 957 (Ala. 2013).[7] The issue here is indeed a procedural issue as the determination does not implicate any substantive law. And, because neither of the two exceptions to this procedural rule applies here,[8] the court applies Alabama law in determining the

---

[7] *See also Cent. States, Se. & Sw. Areas Pension Fund v. Aalco Exp. Co.*, 592 F. Supp. 664, 666 (E.D. Mo. 1984) ("[I]t is equally well-settled that a general statute of limitations is a procedural matter and, therefore, a forum state will apply the forum's statute of limitations to an action even though a sister state's substantive law may govern the merits of that action."); *Nettles v. American Tel. and Tel. Co.,* 55 F.3d 1358, 1362 (8th Cir. 1995) (holding that federal courts under diversity jurisdiction apply the laws of the forum state when ruling on issues concerning statute of limitations).

[8] "The Alabama Supreme Court has noted two instances in which this presumption should be overcome and the time bar of the foreign state applied: (1) when that state has declared the time bar to be part of its public policy, . . . and (2) when the time bar 'is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself.'" *Terrell,* 2013 WL 6145534, at *3 (quoting *Etheredge v. Genie Indus., Inc.,* 632 So. 2d 1324, 1324 (Ala. 1994) and citing *Bodnar v. Piper Aircraft Corp.,* 392 So.2d 1161, 1162–63 (Ala. 1980)). Neither exception is at issue here. And applying Alabama's statute of limitations would not run afoul of Missouri's law which has a public policy that favors protecting defendants under statute of limitations. *See, e.g., State ex rel. & to Use of Collector of Revenue of City of St. Louis v. Robertson,* 417 S.W.2d 699, 701 (Mo. App. 1967) (noting that "a statute of limitations is a legislative declaration of public policy not only to encourage our citizens to seasonably file and to vigilantly prosecute their claims for relief . . . [and] in the main, the public interest is best served by the certainty gained by the prohibition of untimely and stale claims"); *Mikesic v. Trinity Lutheran Hospital,* 980 S.W.2d 68, 73 (Mo.App.1998) (finding that statutes of limitation are "primarily designed to assure fairness to defendants by prohibiting stale claims, those where evidence may no longer be in existence and witnesses are harder to find, all of which tends to undermine the truth-finding process"). Finally, the Missouri borrowing statute "provides for application of a foreign statute of limitations when [1] the alleged action originated in the foreign jurisdiction and [2] the foreign statute of limitations would bar the action." *Harris–Laboy v. Blessing Hosp., Inc.,* 972 S.W.2d 522, 524 (Mo. Ct. App. 1998) (citing Mo. Ann. Stat. § 516.190).

statute of limitations for Hardy's claim. The court notes however that the contract claims are untimely regardless of which statute of limitations applies.[9]

*1. Savings Clause*

Hardy argues that even if the court applies Alabama's statute of limitations, his claims are not barred because of the savings clause, which applies when a defendant concealed the contractual breach and prevented the plaintiff from filing suit earlier. Under Alabama law, when as here, the contract clause includes allegations of fraud and if the statute of limitations period has expired, the plaintiff may be able to invoke the savings clause to toll the statute of limitations. To utilize the savings clause, the complaint "must allege the time and circumstances of the discovery of the cause of action" and "must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury." *See, e.g., Smith v. v. Nat'l Sec. Ins. Co.*, 860 So. 2d 343, 345, 347 (Ala. 2003); *Miller v. Mobile Cty. Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981) (finding that Rule 9(b) of the Alabama Rules of Civil Procedure requires more than "generalized allegations to support their claim for fraudulent concealment").

---

[9] For the reasons more fully explained in Section B.1, *infra*, Hardy would not be able to meet the Missouri five or ten-year statute of limitation because he is unable to adequately explain how he was "capable of ascertainment" an allegedly "undisclosed asset management fee" Transamerica expressly included on account statements dating back to 1996. *See* Mo. Ann. Stat. § 516.120(5). A "reasonably prudent person on notice of a potentially actionable injury" would not have waited nearly twenty years later to file the action. *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo. 2006).

Upon review of Hardy's pleadings, the court finds that Hardy fails to meet the savings clause requirements.  First, Hardy's allegations about Transamerica's purported concealment of his cause of action or injury are mostly vague, repetitive, and conclusory – i.e. Hardy alleges that Transamerica failed to "disclose the amount of the asset management fee," created the "general administrative charge designed to generate hidden profit rather than to cover direct investment expense," misused "discretion to apply interest earning rates," "chose to further reduce the interest earnings rate by taking a greater spread so as to profit," and "consciously chose not to" select and manage the portfolio of investments.  Doc. 11 at 10, 14.  Also, as Transamerica notes, Hardy alleges that Transamerica "mismanaged underlying investments" without identifying a policy provision or factual allegations to put Transamerica on notice of a contractual breach. Doc. 19 at 8.  Such pleadings are tantamount to impermissible "mere generalized allegation[s]" that Transamerica "concealed [Hardy's] cause of action," and do not trigger the savings clause. *Dodd v. Consol. Forest Prod., LLC,* 192 So. 3d 409, 412-13 (Ala. Civ. App. 2015) ("To invoke the savings clause, . . . the plaintiff must state with sufficient particularity how the defendant prevented the plaintiff from discovering the true facts upon which the plaintiff's claim is based.").

Second, by relying on account statements, policy terms, and the certificate of insurance which are dated between the period of 1988 and 1996, Hardy acknowledges in effect that he possessed documentation of the purported

contractual breach well outside the six-year statute of limitations period. Docs. 11-1 and 11-2. According to Hardy, Transamerica breached the contract by impermissibly applying an assessment management fee, using a lowered interest earning rate, and mismanaging underlying investments. Doc. 19 at 8. Citing to language in the policy and insurance certificates, docs. 11-1 and 11-2 at 9, Hardy contends Transamerica "generate[d] hidden profit" and improperly calculated his account balance's interest earnings by deducting an undisclosed "asset management fee" as a "direct investment expense" in addition to deducting an administrative charge, risk charge, and monthly fee. Doc. 11 at 9-11.

But, as Transamerica points out, a joint reading of the policy and certificate permits an asset management fee because the policy and certificate disclose that charges, including policy, administrative, risk, monthly service, and loading fees, are deducted from the account value. Doc. 15 at 15. Indeed, the insurance certificate expressly states that the "effective 'Annual Interest Earnings Rate' for a particular interest earnings strategy, shall be determined net of *direct investment expenses* and *any taxes* which may be levied on investment income . . . [and] will be related only to our *overall portfolio performance* for the particular interest earning strategy(ies) underlying [the insured's] Account Values." Doc. 11-2 at 5 (emphasis added). Moreover, account statements dated as early as December 31, 1996 list monthly details of Hardy's balance, premium paid, interest earned, administrative charges, and current cash value. Doc. 15-1 at 3. And, although

Hardy contends that the asset management fee only became discoverable in 2016, doc. 18 at 8-11, a footnote of the 1996 account statement explicitly indicates that the "net interest earned" is based on the current net annual rate which is "equivalent to the gross pass-through rate less applicable asset management fee." Doc. 15-1 at 3. In that respect, the account statements also expressly indicate that the interest rate Transamerica applied to the account balance includes the asset management fee, albeit in a different column from the administrative charge deduction. *Id.* at 16 (citing doc. 15-1 at 2-49). Put simply, the account statements Hardy references in his complaint disclose the information he challenges, and the over 20-year delay in filing his lawsuit appears to be based on Hardy's failure to direct his attention to the bottom of his account statements.

Construing the pleadings in Hardy's favor does not mean overlooking Hardy's "fail[ure] to allege what prevented [him] from discovering facts surrounding the injury." *Miller,* 409 So. 2d at 422. Hardy's claim is premised on equating the "asset management fee" as an undisclosed "direct investment expense," "grossly inflated general administrative charge," and a disguise to "generate hidden profit." Doc. 11 at 10. However, Hardy concedes that he knew that the "annual statements mentioned an asset management fee," but contends the statement "did not disclose the amount of the fee or other important information." Doc. 18 at 15. Even if true, Hardy has failed to account for why he only made this realization in 2016, and Hardy also offers no explanation for his failure to engage

counsel when the charges and value calculations he challenges initially appeared in 1996. Docs. 11 at 13-14; 15-1 at 2-3.[10] In other words, Hardy fails to provide the requisite showing of "facts or circumstances by which [Transamerica] concealed the cause of action or injury." *Garrett v. Raytheon Co.*, 368 So. 2d 516 (Ala. 1979).

In cases involving fraud, Alabama courts consider "when the plaintiff [became] privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'" *Auto-Owners Ins. Co. v. Abston,* 822 So. 2d 1187, 1195 (Ala. 2001) (quoting *Willcutt v. Union Oil Co.*, 432 So. 2d 1217, 1219 (Ala. 1983)).[11] And a party cannot plead ignorance as there is a "general duty on the part of a person to read the documents received in connection with a particular transaction." *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 421 (Ala. 1997). Since Hardy received annual account statements beginning at least in 1996, doc. 15-1 at 2, "that would put a reasonably prudent person on notice of his claims," the court

---

[10] *See Smith,* 860 So. 2d at 347 (holding that plaintiff's "general reference to the alleged fraud as being 'of a continuing nature' is wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations"); *Fabre v. State Farm Mut. Auto. Ins. Co.*, 624 So. 2d 167, 169 (Ala. 1993) (declining to apply the savings clause when plaintiff received bill notices but failed to allege what prevented her from discovering the potential claim and finding insufficient the attorney's affidavit and opinion that his client could not have discovered the claim sooner).

[11] *See also Williams v. Dan River Mills, Inc.,* 286 Ala. 703, 706 (1971) (noting it is "a well-recognized principle that notice of facts which ought to excite inquiry and which, if pursued, would lead to knowledge of other facts, operates as notice of those facts").

"determine[s] as a matter of law that the limitations period began running as of the date he received the document." *Pate v. Toto,* 2018 WL 4951975, at *5 (N.D. Ala. Oct. 12, 2018).[12] Therefore, in the absence of any other factual allegations in the complaint, the court finds that Hardy has failed to "acquit himself of all knowledge of facts which would put him on inquiry" to toll the statute of limitations. *State Sec. Life Ins. Co. v. Henson*, 288 Ala. 497, 502 (1972). Consequently, the savings clause does not apply here.

*2. Continuing Contract Exception to Statute of Limitations*

Hardy also relies on the continuing contract exception to the statute of limitations, contending that each incident of Transamerica improperly administering his account constituted a separate breach. Doc. 18 at 11. But Hardy concedes that the Alabama Supreme Court "has not recognized the continuing contract theory for tolling the statute of limitations." Doc. 18 at 12. *See also AC, Inc. v. Baker,* 622 So. 2d 331, 334–35 (Ala. 1993) (noting that the "continuing contract" doctrine "has been applied . . . to cases concerning payment for performance of services, to determine when the plaintiff's right to sue for payment occurred"). Moreover, the cases Hardy cite to support the doctrine are inapposite.

---

[12] *See also Epps Aircraft, Inc. v. Exxon Corp.,* 859 F. Supp. 533 (M.D. Ala. 1993), *aff'd,* 30 F.3d 1499 (11th Cir. 1994) (noting that the "question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would put a reasonable person on notice of fraud"); *Ex parte Alabama Farmers Co-op, Inc.*, 911 So. 2d 696, 703 (Ala. 2004) (whether a plaintiff discovered or should have discovered fraud is an issue a court may decide as a matter of law in cases where "the plaintiff actually knew of facts that would have put a reasonable person on notice of the fraud").

14

Two of the cases cite Alabama Code § 6-5-280, which applies to severable contracts with payment installments,[13] and Hardy maintains they support a finding that Transamerica committed "successive" breaches each time it calculated Hardy's account in an unanticipated manner. However, the contract here is not severable. Likewise, given that this is an insurance contract instead of a stock investment, Hardy cannot rely on *Honea v. Raymond James Fin. Servs.*, *Inc.,* in which the Alabama Supreme Court found that each investment involving high risk trading could represent independent breaches under a self-regulatory organization's policy. 240 So. 3d 550, 568 (Ala. 2017). And, albeit under Florida law, "the Eleventh Circuit[] [has] rejected the idea [that insurance] policies are installment contracts giving rise to continuing breaches for each unpaid monthly benefit." *Curry v. Trustmark Ins. Co.*, 600 F. App'x 877, 880–81 (4th Cir. 2015) (citing *Dinerstein v. Paul Revere Life Ins. Co.*, 173 F.3d 826, 828 (11th Cir.1999) (applying Florida law and holding that "the cause of action [regarding an insurance disability policy] was not for a debt 'payable by installments'" and that "an insurance contract the statute of limitations begins to run when the contract is breached, . . . specifically . . . when an insurer first refuses to pay the claim at issue")). Accordingly, Hardy can only demonstrate damages flowing from the

---

[13] *See Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc.*, 873 So. 2d 1091 (Ala. 2003) (applying to severable contracts involving monthly lease payments made in installments); *Ripps v. Powers,* 356 F. App'x 352, 355 (11th Cir. 2009) (applying to severable contracts involving unshared distributions in a joint ownership agreement).

purported initial breach of the contract in 1996 when the asset management fee appeared in his account statement.

## IV. CONCLUSION

To summarize, the statute of limitations began to run on Hardy's claims in December 1996, *see* doc. 15-1 at 2, more than twenty-two years before Hardy filed this case. Therefore, his claims are time-barred. A separate order dismissing this case will be issued.

**DONE** the 23rd day of July, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE